O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JERRY L. ANDERSON,                    )    NO. EDCV 09-00545-MAN
                                      )
                Plaintiff,            )
                                      )    MEMORANDUM OPINION
          v.                          )
                                      )    AND ORDER
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
                Defendant.            )
_____)

     Plaintiff filed a Complaint on March 27, 2009, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for supplemental security income ("SSI").   On
April 14, 2009, the parties consented to proceed before the undersigned
United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).   The
parties filed a Joint Stipulation on October 30, 2009, in which:
plaintiff seeks an order reversing the Commissioner's decision and
awarding benefits or, in the alternative, remanding the matter for
further administrative proceedings; and defendant seeks an order
affirming the Commissioner's decision.   The Court has taken the parties'
Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 31, 2006, plaintiff filed an application for SSI, alleging an inability to work since June 2, 1997, due to: a spinal cord injury; degenerative changes to the cervical, thoracic, and lumbar spine; status post-bilateral carpal tunnel releases; depression; and pain. (Administrative Record ("A.R.") 81-87, 103.)[1] Plaintiff has past relevant work experience as a packer for a moving company and machine operator. (A.R. 94.)

The Commissioner denied plaintiff's application initially (A.R. 52-56) and on reconsideration (A.R. 57-61). On May 13, 2008, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ"). (A.R. 32-49.) On June 25, 2008, the ALJ denied plaintiff's claims (A.R. 8-16), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since October 31, 2006, the application date. (A.R. 10.) The ALJ determined that plaintiff has "severe" impairments involving the

---

[1]   On June 2, 1997, plaintiff sustained an industrial slip and fall accident, after which she reported feeling "immediate pain in the back, neck and pelvic area." (A.R. 160-61.)

musculoskeletal and genitourinary systems,[2] but she does not have any impairment or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (A.R. 10-11.) The ALJ found that plaintiff does not have a "severe" mental impairment. (A.R. 10.)

In setting forth plaintiff's residual functional capacity ("RFC"), the ALJ relied on the opinion of a non-examining State agency review physician, who found that plaintiff retains the ability to:

> perform light work as defined in 20 C.F.R. 416.967(b) except postural limitations (i.e., climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling) can be done on an occasional basis [and plaintiff] cannot climb ladders, ropes or scaffolds.

(A.R. 11, 13.) The ALJ found that plaintiff is unable to perform any of her past relevant work, but using the Medical-Vocational Rules (the "Grids") as a framework, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff can perform. (A.R. 15.)

Accordingly, the ALJ concluded that plaintiff was not under a disability, as defined in the Social Security Act, since October 31, 2006, the date the application was filed. (A.R. 15.)

---

[2] The genitourinary system pertains to the genital and urinary systems. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 782 (31st ed. 2007).

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

4

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following five issues:  (1) whether the ALJ properly considered the opinion of examining physician George Watkin, M.D.; (2) whether the ALJ properly considered the opinion of examining physician Bijan Zardouz, M.D., regarding plaintiff's temporary total disability; (3) whether the ALJ properly considered plaintiff's mental impairment; (4) whether the ALJ properly complied with the SSR 96-7p requirement that he consider the type, dosage, effectiveness, and side effects of plaintiff's medications; and (5) whether the ALJ erred in not obtaining the testimony of a vocational expert.  (Joint Stipulation ("Joint Stip.") at 2-3.)

**I.  <u>The ALJ Failed To Consider Properly The Opinions Of Examining Orthopaedist George Watkin, M.D., and Examining Neurologist Bijan Zardouz, M.D.</u>**

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion

5

carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(d)(1).  The opinions of examining physicians may constitute substantial evidence upon which an ALJ may rely in assessing a claimant's RFC when they are properly supported by the medical evidence. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant). When the opinion of a treating or examining physician is contradicted, it may be rejected by an ALJ only for specific and legitimate reasons supported by substantial evidence in the record.  Widmark v. Barnhart, 454 F.3d at 1066-67; Andrews v. Shalala, 53 F.3d at 1043.

*Doctor Watkin:*

On July 16, 2002, Dr. Watkin, an orthopaedist, examined plaintiff in connection with plaintiff's worker's compensation case.[3]  (A.R. 160-180.)  Dr. Watkin diagnosed plaintiff with: strain/sprain of the cervical spine, superimposed over multiple degenerative changes, spondylolisthesis and anterolisthesis of C3 on C4; status post-bilateral carpal tunnel releases; and strain/sprain of the thoracic and lumbar spine, superimposed on multiple degenerative changes.  (A.R. 168.)

In a 20-page permanent and stationary report, Dr. Watkin noted plaintiff's complaints of "shooting, stabbing low back pain, radiating

---

[3]    Dr. Watkin reviewed and summarized all of plaintiff's available medical records.  (A.R. 160.)

throughout the mid and upper back, [and which] radiates to the neck."
(A.R. 160.)  Dr. Watkin noted "aching, knotting and stiffness in the
neck, [and] [w]ith bending, stooping, kneeling and squatting there is
pain radiating to the pelvic area." (*Id.*)  Dr. Watkin further noted
plaintiff's complaints of "pain in both wrists [and] weakness in both
hands, though more prominent in the right hand," and her inability to
"grip or grasp objects for a long period of time." (*Id.*)  In addition,
Dr. Watkin noted decreased grip strength in plaintiff's bilateral upper
extremities and reduced range of motion in plaintiff's lumbar spine.
(A.R. 169.)

Critically, Dr. Watkin opined that, due to plaintiff's lumbar spine
condition, she should be precluded from "heavy lifting, repeated bending
and stooping, as well as from prolonged sitting and standing." (A.R.
170.)  Dr. Watkin further opined that, due to plaintiff's bilateral
carpal tunnel syndrome, plaintiff should be precluded from "repetitive
gripping and grasping and from repetitive manipulation." (*Id.*)

In his decision, the ALJ summarized Dr. Watkin's opinion but failed
to indicate whether he accepted or rejected it. (A.R. 12.)  While it is
not entirely clear, it appears that the ALJ implicitly rejected Dr.
Watkins' opinion, at least in part, because the ALJ's RFC assessment
does not reflect work restrictions consistent with Dr. Watkin's opinion
with respect to repetitive gripping, grasping, or manipulation, and
prolonged sitting and standing.[4] (A.R. 12, 170.)  The ALJ's implicit

_____

[4]    Defendant contends that the ALJ's implicit rejection Dr. Watkin's
"prophylactic restrictions," imposed in 2002, was proper, because later
reports of Lawrence A. Freiwell, M.D., and Nicholas N. Lin, M.D.,

rejection of Dr. Watkin's opinion does not meet the specific and legitimate standard contemplated by Ninth Circuit precedent. *See* <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990)(mere summarization and implicit rejection of physician's opinion does not suffice).

*Doctor Zardouz:*

Dr. Zardouz examined plaintiff at least five times from September 22, 2005, to May 8, 2006, in connection with injuries sustained as a result of her work-related accident. (A.R. 240-83.) Each examination consisted of thorough physical and neurological assessments, as well as a review and summary of plaintiff's laboratory results and medical records. *(Id.)* Dr. Zardouz dictated extensive reports of his examinations of plaintiff, which included Dr. Zardouz's impressions and comments with respect to plaintiff's physical impairments and disability status. (A.R. 256-73.)

---

indicated no restrictions with respect to plaintiff's bilateral hands, and the restrictions imposed on plaintiff's ability to sit and stand were not as restrictive as those imposed by Dr. Watkin. (Joint Stip. at 5-6.) However, a reviewing court cannot affirm the denial of benefits based on a reason not stated or finding not made by the ALJ, and defendant's after-the-fact attempt to supply an acceptable basis for the ALJ's decision is unavailing. *See, e.g.,* <u>Connett</u>, 340 F.3d at 874 (noting that a reviewing court is "constrained to review the reasons the ALJ asserts," and an ALJ's decision cannot be affirmed on the basis of evidence he did not discuss); <u>Pinto v. Massanari</u>, 249 F.3d 840, 847-48 (9th Cir. 2001)(an agency decision cannot be affirmed on the basis of a ground that the agency did not invoke in making its decision); *see also* <u>Barbato v. Comm'r of Soc. Sec. Admin.</u>, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996)(remand is appropriate when a decision does not adequately explain how a decision was reached, "[a]nd that is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions," because "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council")(citation omitted).

1    On September 22, 2005, Dr. Zardouz performed an initial
2  neurological evaluation of plaintiff. (A.R. 273-82.) Dr. Zardouz noted
3  pain in plaintiff's: neck, which extends to her shoulders; mid and low
4  back, which extends to her entire lower extremities, down to her feet,
5  causing numbness in her lower extremities; and both buttocks, which
6  extends to the lower abdomen and groin area on both sides. (A.R. 274-
7  75.) Plaintiff reported that her pain and numbness are worse if she
8  "does too much lifting, carrying, bending, stooping, standing, sitting,
9  lying down, and even minor household duties." (*Id.*) Dr. Zardouz made
10 the following diagnoses: (1) musculoligamentous sprain/strain syndrome
11 of the mid-thoracic region; (2) musculoligamentous sprain/strain
12 syndrome of the lumbosacral region; (3) unobtainable right ankle jerk,
13 suggestive of right S1 root dysfunction; (4) musculoligamentous
14 sprain/strain syndrome of the cervical region; and (5) left
15 temporomandibular joint dysfunction; and (6) presbyopia. (A.R. 279-80.)
16 Dr. Zardouz also noted the following aspects of plaintiff's medical
17 history and her subjective complaints: (1) subjective complaint of pain
18 in the upper and lower extremities; (2) history of cervical fusion in
19 July 2003; (3) subjective complaints of headaches, dizziness, blurred
20 vision, and hearing problems on the left side; (4) occasional chest pain
21 and shortness of breath; (5) difficulty with bowel and bladder control
22 for the past five years; and (6) recent memory difficulty. (*Id.*) Dr.
23 Zardouz opined that plaintiff would be temporarily totally disabled for
24 six weeks, or until November 3, 2005. (A.R. 281.)

25

26   On October 24, 2005, Dr. Zardouz performed a follow-up neurological
27 evaluation of plaintiff. (A.R. 256-71.) Plaintiff again presented with
28 complaints of pain in her neck, lower back and buttocks, as well as pain

in her upper and mid-back.  (A.R. 257.)  Dr. Zardouz prescribed Vicodin
and Soma for plaintiff's pain.  (A.R. 271.)  Dr. Zardouz again opined
that plaintiff would remain temporarily totally disabled for six weeks,
or until December 5, 2005.  (*Id.*)

On December 19, 2005, plaintiff underwent another follow-up
neurological examination by Dr. Zardouz.  (A.R. 246-49.)  Plaintiff's
pain persisted in her neck and upper and mid-back, off and on.  (A.R.
246-47.)  Plaintiff reported that her low back pain is "worse with
carrying objects and sometimes with driving."  (A.R. 247.)  Plaintiff
reported that, at times, she experiences "shooting pain and numbness to
her lower extremities, down to her feet."  (*Id.*)  Upon examination, Dr.
Zardouz determined that there was "tenderness in the cervical region
with range of movement."  (A.R. 247-48.)

On May 8, 2006, Dr. Zardouz examined plaintiff and noted mid and
lower back pain, as well as occasional pain in her left cervical
shoulder region.  (A.R. 241.)  Dr. Zardouz noted that plaintiff
underwent surgery to the cervical area in June 2003, and she was
referred to an orthopedic group due to the scoliosis in her back.  (*Id.*)
Dr. Zardouz opined that plaintiff would remain temporarily totally
disabled for the next month, or until June 8, 2006.  (A.R. 243.)

Plaintiff contends that, while the ALJ "summarized Dr. Zardouz's
neurological examination findings and acknowledged Dr. Zardouz's opinion
that [p]laintiff remained temporarily totally disabled . . . the ALJ
failed to indicate if he accepted or rejected Dr. Zardouz's findings."
(Joint Stip. at 8.)  Defendant argues that the ALJ "accurately

10

1   summarized Dr. Zardouz' findings" and suggests that this Court may

2   "infer the ALJ accepted [Dr. Zardouz's] opinion," because "nothing in

3   the ALJ's decision was contrary to Dr. Zardouz's findings" and "because

4   [p]laintiff's RFC was not necessarily inconsistent with Dr. Zardouz'

5   opinion." (*Id.*)

6

7       First, the Court cannot infer that the ALJ accepted Dr. Zardouz's

8   opinion, as defendant suggests.   The ALJ's RFC determination is not

9   consistent with Dr. Zardouz's findings.   Indeed, Dr. Zardouz found

10  significant musculoligamentous sprain/strain in plaintiff's mid-

11  thoracic, lumbosacral, and cervical regions, along with attendant pain,

12  tenderness, and limited range of movement. (A.R. 247-48, 279-80.) Yet,

13  the ALJ's RFC assessment does not adequately account for plaintiff's

14  spinal limitations.  Second, while the ALJ is not bound by a physician's

15  opinion regarding the ultimate issue of disability, *i.e.*, Dr. Zardouz's

16  opinion that plaintiff "remained temporarily totally disabled," the ALJ

17  must set forth specific and legitimate reasons supported by substantial

18  evidence in the record if rejecting the opinion.[5]  *See* <u>Reddick v. Chater</u>,

19  157 F.3d 715, 725 (9th Cir. 1998)(the reasons for rejecting a

20  physician's opinion regarding disability must be comparable to those

21  required for rejecting a doctor's medical opinion, and those reasons

22  must be specific and legitimate).   The ALJ's summary of Dr. Zardouz's

23  opinion, without any specific reference as to why or whether he rejected

24

25      [5]   The Court does note that, even if fully credited, Dr. Zardouz's
    opinions regarding plaintiff's temporary total disability would not, in
26  and of themselves, establish her entitlement to benefits.   As noted
    above, Dr. Zardouz opined only that plaintiff was and would "remain[]
27  temporarily totally disabled" from September 2005, through June 2006, a
    period of approximately nine months, which is less than the threshold
28  durational requirement of a "continuous period [of disability] of not
    less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905.

11

1  it, is not a sufficient statement of reasons for his rejection of Dr.
2  Zardouz's opinion.

3

4      Accordingly, remand is required for proper consideration of the
5  opinions of Drs. Watkin and Zardouz in accordance with the governing
6  legal standards and for reassessment of plaintiff's RFC.

7

8  **II.  The ALJ Did Not Err With Respect To His Consideration Of**
9      **Plaintiff's Alleged Mental Impairment.**

10

11     "An impairment or combination of impairments can be found 'not
12  severe' only if the evidence establishes a slight abnormality that has
13  'no more than a minimal effect on [a claimant's] ability to work.'"
14  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)(*citing* Social
15  Security Ruling ("SSR") 85-28 and Yuckert v. Bowen, 841 F.2d 303 (9th
16  Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination of
17  impairments is not severe if it does not significantly limit your
18  physical or mental ability to do basic work activities").

19

20     In his decision, the ALJ concluded that "there is no basis for
21  finding that [plaintiff] has a 'severe' mental impairment for the
22  imposition of any mental limitations." (A.R. 10.)  The ALJ correctly
23  observed that "there was no evidence of a longitudinal history of a
24  psychiatric impairment, of repeated hospitalizations, or of prolonged
25  outpatient treatment. [Plaintiff] has neither requested nor received
26  extensive psychiatric treatment other than the use of mild anti-
27  depressant medication." (*Id.*)

28

1    Here, plaintiff bore the burden of proving that her alleged mental

2   impairment was disabling, and plaintiff failed to meet that burden.  *See*

3   Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999); 20 C.F.R. § 416.912

4   ("In general, you have to prove to us that you are blind or disabled.")

5   The only evidence submitted by plaintiff in support of her claimed

6   mental impairment was a one-page note from the McKee Clinic dated

7   September 8, 2006, in which a nurse assessed plaintiff with "tooth pain"

8   and "depression." (A.R. 287.)  In support of her allegation of a mental

9   disability, plaintiff asserts that this note "revealed that [p]laintiff

10  complained of 'getting quite frustrated,' and expressed that she felt

11  'very hopeless.'" (Joint Stipulation at 11; A.R. 287.)  However, when

12  read in context, plaintiff actually reported to the nurse that she had

13  been involved in a workman's compensation case since April 2006, and was

14  "getting quite frustrated" because "she d[id] not feel like any progress

15  [was] being made," and she was "feeling very hopeless because the bills

16  are adding up." (A.R. 287.)  This one-page clinic note appears to be

17  the only evidence of record of any possible mental impairment and is it

18  inadequate to meet plaintiff's burden of establishing a disabling mental

19  impairment.  *See* 20 C.F.R. § 416.921 ("[a]n impairment or combination of

20  impairments is not severe if it does not significantly limit your

21  physical or mental ability to do basic work activities").

22

23    Moreover, at a psychiatric consultative examination with Linda M.

24  Smith, M.D., on February 8, 2007, plaintiff reported that she "doesn't

25  think she has emotional or mental problems," but if she is depressed,

26  then "she might be depressed because of physical problems and not being

27  able to work again." (A.R. 310.)  Plaintiff "denie[d] any other

28  symptoms of depression, and she, herself, isn't sure whether she would

13

call this depression, because it is closely related to her physical problems." (*Id.*)    Plaintiff reported that she has never received any outpatient psychiatric treatment and has never been hospitalized in a psychiatric ward.    (A.R. 311.)    Indeed, at the hearing, plaintiff testified that, although she takes Paxil, she does not see a doctor for any mental health treatment.    (A.R. 42.)    According to Dr. Smith, plaintiff performed "very well in the mental status exam," and "she did very well interpersonally." (A.R. 314.)  Dr. Smith made no psychiatric diagnosis and concluded that plaintiff is not impaired, from a psychiatric standpoint, in her ability to work.  (*Id.*)

In her portion of the Joint Stipulation, plaintiff contends that the ALJ "failed to use the proper legal standards" in evaluating plaintiff's mental impairment. (Joint Stip. at 11.)    Specifically, plaintiff argues that:

> [w]hen there is a colorable claim of a mental impairment ... the ALJ now must rate the claimant's functional limitations in three areas (activities of daily living; social functioning; and concentration, persistence, or pace) as being none, mild, moderate, marked, or extreme, and also rate the episodes of decompensation as either none, one or two, three, or four or more, and such ratings must be included in the ALJ's written decision.

(Joint Stip. at 10.)    Plaintiff is mistaken.

As defendant correctly points out, "the ALJ was only required to

14

rate [p]laintiff's degree of limitations in the functional areas of activities of daily living, social functioning, and concentration, persistence, or pace *if* [p]laintiff established a medically determinable impairment." (Joint Stip. at 11; emphasis added); *see* 416.920a(b) and 416.920a(b)(2) ("If we determine that you have a medically determinable mental impairment . . . [w]e must then rate the degree of functional limitation resulting from the impairment(s)"). Plaintiff failed to prove that she had a medically determinable mental impairment, and therefore, the ALJ was not required to rate plaintiff's degree of limitations in any functional area.

Accordingly, the ALJ did not err in his consideration of plaintiff's alleged mental impairment.

**III.** **There Is No Reversible Error With Respect To The ALJ's Consideration Of The Side Effects Of Plaintiff's Medications.**

Pursuant to SSR 96-7p, an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." However, an ALJ need only consider those medication side effects that have a "significant impact on an individual's ability to work." <u>Erickson v. Shalala</u>, 9 F.3d 813, 817-18 (9th Cir. 1993)(*citation omitted*).

Plaintiff contends that the ALJ failed to consider the type, dosage, and side effects of plaintiff's medications properly. (Joint Stip. at 13-14.) Plaintiff, however, has not met her burden to show that the use of medications, and any side effects therefrom, had a

15

negative effect on her ability to work.  At the hearing, plaintiff testified that she was taking, as medications, Norco, Soma, Paxil, and an occasional aspirin.  (A.R. 41-42.)  However, plaintiff did not testify that she experienced any side effects from these medications, and there is no medical evidence that she did.

In fact, in the Disability Report-Adult form (A.R. 108) and Disability Report-Appeal form (A.R. 142), plaintiff listed the medications she was taking and reported that the side effects she experienced were "NONE."  In her portion of the Joint Stipulation, plaintiff lists the possible side effects that, according to www.webmd.com, one *may* experience when taking these medications.  But plaintiff fails to cite any medical evidence, or any evidence whatsoever, showing that, or otherwise to explain how and to what extent, these general side effects affected plaintiff's ability to work or caused plaintiff any functional limitations.  *See* <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164 (9th Cir. 2001)(side effects not severe enough to impair ability to work are not relevant).

Accordingly, the ALJ did not err in his consideration of the side effects of plaintiff's medication.

**IV.  Because The ALJ's Findings Regarding Plaintiff's RFC Must Be Reassessed On Remand, Vocational Expert Testimony May Be Required.**

Plaintiff contends that the ALJ erred in using the Grids as a framework to determine that plaintiff was capable of performing other work in the national economy, rather than seeking testimony from a

16

vocational expert. (Joint Stip. at 16-17.) It is well-settled that when a claimant suffers only from exertional limitations, but not non-exertional limitations such as manipulative limitations and pain, the ALJ may apply the Grids, at step five, to match the claimant with appropriate work. Holohan, 246 F.3d at 1208; Reddick, 157 F.3d at 729; Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). However, an ALJ "may apply the [G]rids in lieu of taking testimony of a vocational expert *only* when the [G]rids accurately and completely describe the claimant's abilities and limitations" and not in cases where the Grids do not accurately account for a claimant's limitations. Reddick, 157 F.3d at 729 (emphasis added); *see also* Holohan, 246 F.3d at 1208 (as the Grids "are based only on strength factors," they are sufficient to meet the Commissioner's burden at step five "only when a claimant suffers only from exertional limitations").

Based on the fact that the ALJ's findings regarding the medical opinion evidence must be reevaluated on remand, the ALJ's ultimate RFC assessment may change. If, on remand, the ALJ finds that plaintiff's non-exertional limitations significantly limit the range of work permitted by her exertional limitations, the ALJ must seek testimony from a vocational expert. *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert); Desrosiers, 846 F.2d at 580 (Pregerson, J., concurring)(stating that postural limitations barring repeated stooping or bending prevented the claimant from performing the full range of light work, making use of the Grids inappropriate).

17

**V.   Remand Is Required.**

     The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

                              **CONCLUSION**

     Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

     IT IS FURTHER ORDERED that the Clerk of the Court shall serve

                                   18

copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 23, 2010

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

19